UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESUS CORONA DIAZ,<br><br>    Petitioner,<br><br>    v.<br><br>SAMUEL OLSON, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement, and BRANDON COWLEY, Warden, Clay County (Indiana) Jail,<br><br>    Respondents. | No. 25 CV 12141<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Petitioner Jesus Corona Diaz, a Mexican national, was arrested by Immigration and Customs Enforcement on October 2, 2025, pursuant to a Department of Homeland Security warrant. He was issued a notice to appear for removal proceedings. He has been detained without a hearing to decide whether he may be released by the immigration authorities. Corona Diaz filed a petition for a writ of habeas corpus. For the reasons discussed below, the petition is granted.

**I. Background**

Jesus Corona Diaz is a native and citizen of Mexico. [1] ¶ 2.[1] He first entered the United States in 1999 and has since married a U.S. citizen and has four U.S.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the petition for habeas corpus, [1], the government's return to Corona Diaz's petition and memorandum, [13] and [14], and its accompanying exhibits, [13-1], [13-2], and [13-3].

citizen children. [1] ¶ 2–3. He has no criminal convictions or pending criminal charges. [1] ¶ 3. In 2013, Corona Diaz applied for an I-601A waiver, an application for provisional unlawful presence, which was denied by United States Citizenship and Immigration Services. [13-3] at 2.

On October 2, 2025, Corona Diaz was a passenger during an inspection by Indiana State Police at a weigh station in Lowell, Indiana. [1] ¶ 6; [13-3] at 2. He provided a Mexican ID card and was placed into custody when he did not provide valid immigration documents. [13-3] at 2. He was brought to the U.S. Immigration and Customs Enforcement's facility in Broadview, Illinois. [1] ¶ 7. On October 3, Corona Diaz filed a petition for a writ of habeas corpus, seeking an order to release him or schedule a bond hearing. He was subsequently moved to the Clay County Detention Center in Brazil, Indiana. [14] at 11 n.2.

## II. Threshold Considerations

### A. Proper Respondents

A writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. The "default rule is that the proper respondent is the warden of the facility where the prisoner is being held," but when the government "moves a habeas petitioner after [ ]he properly files a petition naming h[is] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 441 (2004)) (alterations in original). The "Attorney

2

General or some other remote supervisory official," like the Secretary of Homeland Security, is generally not a proper respondent. *Rumsfeld*, 542 U.S. at 435. Kristi Noem, the Secretary of the Department of Homeland Security, is dismissed as a respondent and will be removed from the case caption.

Brandon Cowley is the warden of Clay County Jail, and Corona Diaz's current immediate custodian. *See H.G.V.U. v. Smith*, No. 25 CV 10931, 2025 WL 2962610, at *2 (N.D. Ill. Oct. 20, 2025). Cowley will be added to the caption pursuant to Federal Rule of Civil Procedure 25(d). The Field Office Director for the Chicago Office of Immigration and Customs Enforcement also has authority to effectuate Corona Diaz's release and will remain a respondent, although the Clerk will substitute the current director, Samuel Olson, for the former director, Russell Hott.

### B. Jurisdiction

The government challenges the court's jurisdiction. It argues that the case is not ripe for review. It also argues that 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) strip jurisdiction to review immigration decisions, including detention decisions.

#### 1. Ripeness

The government contends that the case is not yet ripe for review. Ripeness is a jurisdictional requirement. *See Wickstrom v. Air Line Pilots Ass'n, Int'l*, __ F.4th __, 2025 WL 2847771, at *2 (7th Cir. Oct. 8, 2025). A case is ripe "if it is 'not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)). But here,

3

the alleged harm—detention in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment—has already happened. *See id.* Because Corona Diaz alleges that he is currently detained because of the government's actions, the parties' dispute "is concrete, not abstract," and the case is ripe for review. *Id.* at *3.

      2.     8 U.S.C. § 1252(g)

The government next argues that 8 U.S.C. § 1252(g) bars district courts from hearing challenges to removal proceedings, including a decision to detain a noncitizen pending removal. That subsection provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This provision is narrow, and does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (§ 1252(g) is as narrow as § 1252(b)(9)). The provision should not be read as a "general jurisdictional limitation." *Regents of the Univ. of Cal.*, 591 U.S. at 19. Instead, the language refers to "just those three specific actions themselves"—commencement of proceedings, adjudication of a case, or execution of a removal order. *Jennings*, 583 U.S. at 294. Corona Diaz is not challenging the commencement of removal, its adjudication, or the execution of a removal order. Instead, Corona Diaz

4

is challenging the authority to detain him without a hearing. *Cf. id.* at 292. Section 1252(g) does not strip the court of jurisdiction to hear his claim.

### 3. 8 U.S.C. § 1252(b)(9)

Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." Like § 1252(g), this provision is narrow, because an expansive interpretation "would lead to staggering results." *Jennings*, 583 U.S. at 293. Where a case requires deciding a "'question of law,' specifically, whether … certain statutory provisions require detention without a bond hearing," there is no jurisdictional bar. *Id.* at 292. When a petitioner does not ask "for review of an order of removal … challenging the decision to detain them in the first place or to seek removal; … [nor] even challenging any part of the process by which their removability will be determined," § 1252(b)(9) does not strip jurisdiction. *Id.* at 294–95; *see also Nielsen v. Preap*, 586 U.S. 392, 399, 402 (2019) (section 1252(b)(9) is not a jurisdictional bar to challenge of detention authority under § 1226(c)(2)).

Corona Diaz is not challenging the underlying removal proceedings or the decision to detain him in the first place. He instead challenges a predicate question: whether his continued detention under the mandatory detention framework of 8 U.S.C. § 1225(b) is unlawful. A challenge to the authority to detain is not barred by § 1252(b)(9). *Nielsen*, 586 U.S. at 402.

5

### 4. 8 U.S.C. § 1252(a)(2)(B)(ii)

Finally, the government argues that 8 U.S.C. § 1252(a)(2)(B)(ii) bars jurisdiction. Under § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review … any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this chapter to be in [their] discretion." The petition is not a challenge to a discretionary decision to detain Corona Diaz. Instead, the petition challenges the application of a statutory provision, under which Corona Diaz is detained without a bond hearing. The extent of the government's authority to detain someone under a detention statute is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Indeed, the authority to detain Corona Diaz invoked by the government is not discretionary. *See Jennings*, 583 U.S. at 297 ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). There is no discretionary decision here, and so § 1252(a)(2)(B)(ii) does not strip the court of jurisdiction.

### C. Exhaustion

The government also argues that Diaz Corona should exhaust his claims before an immigration judge and the Board of Immigration Appeals before addressing it to the district court. Exhaustion is not required for habeas petitions brought under 28 U.S.C. § 2241. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In exercising my "sound judicial discretion" to determine whether to require exhaustion, I must "balance the individual and institutional interests involved, taking into account 'the nature of the claim presented and the characteristics of the particular

6

administrative procedure provided.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). Exhaustion may be excused when "appealing through the administrative process would be futile because the agency is biased or has predetermined the issue." *Id.* (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

In *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 255 (BIA 2025), the Board of Immigration Appeals held that immigration judges "lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." This decision binds immigration judges. "There is nothing to indicate the BIA would change its position," and "[t]herefore, appealing to the BIA" would be "futile" because it has "predetermined the statutory issue," and Corona Diaz would have "no reasonable prospect" of obtaining relief. *Gonzalez*, 355 F.3d at 1018–19. Because appealing through the administrative process would be futile, Corona Diaz is not required to exhaust his remedies through the immigration courts.

### III. Analysis

The parties point to two statutes governing immigration detention: 8 U.S.C. §§ 1225 and 1226. Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. An applicant for admission shall be detained for a removal proceeding "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). An applicant for admission is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C.

7

§ 1225(a)(1). Under § 1225(b), no release hearing is available. *See Jennings*, 583 U.S. at 297.

Section 1226(a) is the "default rule" for the discretionary detention of noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. It authorizes detention only "[o]n a warrant issued" by the Attorney General leading to the noncitizen's arrest. *Id.* at 302. Federal regulations provide for a release hearing for those noncitizens detained under § 1226(a). 8 C.F.R. §§ 236.1(c)(8) and (d)(1); *Jennings*, 583 U.S. at 306. At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen*, 586 U.S. at 397–98.

The question is whether Corona Diaz falls under the scope of § 1225(b) or § 1226(a).

There is no dispute that Corona Diaz is present in the United States and has not been admitted. He is "deemed" an "applicant for admission." 8 U.S.C. § 1225(a)(1). The government contends that Corona Diaz is also "seeking admission" because he has not agreed to leave the United States, conceded his removability, or allowed his removal proceedings to play out. The government does not argue that Corona Diaz has taken any active steps to seek admission. Essentially, the government's position is that a noncitizen seeks admission by default; unless he tries to leave the United States, the noncitizen is seeking admission.

There is some logical force to government's position. It argues that an applicant for admission must, by definition, be seeking admission. A person ordinarily does not

8

apply for a status they are not seeking. Elsewhere in § 1225, Congress required all noncitizens who are applicants for admission "or otherwise seeking admission" to be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The use of "otherwise" suggests that applicants for admission are also seeking admission. And it may seem odd that an applicant for admission who avoids formal process could be treated more favorably (with an opportunity for release) than one who raises their hand and submits to the immigration process. *See Matter of Yajure Hurtado*, 29 I&N Dec. at 223–25 (discussing the undesirable consequence of a statutory scheme that gave those who entered without inspection a right to request release on bond while those who presented themselves to authorities were subject to mandatory custody).

But in § 1225(b)(2)(A), Congress did not say "applicants for admission" are subject to mandatory detention. Instead, it said that an applicant for admission, who is "an alien seeking admission" is subject to mandatory detention, indicating that there is some difference between an "applicant for admission" and an "alien seeking admission."

That difference comes from § 1225(a)(1). There are people who are deemed applicants even though they did not apply for admission. Congress supplanted the ordinary usage of "applicant" by imposing that term onto categories of noncitizens who did not actually apply, or who did not seek formal admission into the United States.

Because of § 1225(a)(1), the universe of "applicants for admission" is not coextensive with noncitizens "seeking admission." If the categories overlapped

9

perfectly, there would be no need for Congress to have used the phrase "seeking admission" in § 1225(b)(2)(A). *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall be superfluous, void, or insignificant."). Reading the statute to give meaning to every word and phrase, a noncitizen "seeking admission" must be different than an "applicant for admission."

One such difference is the verb tense of "seeking." The statute has a temporal element—the petitioner is doing something. *See United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992)) ("'Congress' use of a verb tense is significant in construing statutes.'"). The use of the word "seeking" implies a continuing action. On the other hand, an applicant for admission includes the passively designated noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). I read the different verb tenses to mean that an applicant for admission needs also to be actively seeking admission for § 1225(b)(2)(A) to apply.

The Supreme Court has distinguished between noncitizens seeking admission and those already in the country. *Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." (emphasis added)). *Jennings* says that a noncitizen present

10

in the country, including noncitizens "who were inadmissible at the time of entry" may be removed, and that § 1226 is the default rule for those noncitizens. *Id.* at 288. Noncitizens who were inadmissible at the time of entry include those who lack a valid entry document at the time of their arrival to the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107–08 (2020) (citing 8 U.S.C. §§ 1182, 1229a(e)(2)(A)). There is a difference between applicants for admission and those seeking admission, and § 1226(a) governs detention of noncitizens who are present in the United States despite being inadmissible at the time they entered—like the government says Corona Diaz was.

The government does not argue that § 1226 applies only to admitted foreign nationals or people previously admitted who now find themselves subject to arrest warrants and criminal proceedings. Indeed, they cannot, because § 1226(c) applies to noncitizens who are "inadmissible under paragraph 6(a) … of section 1182(a) of this title"—i.e. noncitizens who are "present in the United States without being admitted or paroled." 8 U.S.C. § 1226(c)(1)(E)(i) (the Laken Riley Act); 8 U.S.C. § 1182(a)(6)(A). The Laken Riley Act mandates detention for noncitizens present in the United States without being admitted or paroled (in other words, applicants for admission) who have been charged with, been arrested for, been convicted of, admitted having committed, or admitted committing acts which constitute the essential elements of specified crimes. 8 U.S.C. § 1226(c)(1)(E). In the Act, Congress identified a group of applicants for admission who must *not* have been seeking admission, or else there would be no reason to enact the new provisions of § 1226(c). If applicants for

11

admission are necessarily seeking admission, this group would have already been subject to mandatory detention. *See Polansky*, 599 U.S. at 432. Detention of "applicants for admission" is not solely governed by § 1225, therefore, and can be governed by § 1226.

Finally, the government's own actions suggest that § 1226(a) applies—DHS issued a "warrant for arrest of alien" "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. §§ 1226 and 1357]." [13-2]. That DHS issued a warrant, citing 8 U.S.C. § 1226, is consistent with the procedures applicable under § 1226(a) rather than § 1225(b). Corona Diaz was arrested under a warrant pursuant to 8 U.S.C. § 1226, and he is entitled to continuing the process under that provision. *Cf. Regents of the Univ. of Cal.*, 591 U.S. at 24 (holding that under arbitrary and capricious review of agency action, "[t]he basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Corona Diaz has been in the United States for over twenty-five years. While he falls under the definition of "applicant for admission" because he has not been admitted to the United States, there is no evidence that he was seeking admission to the United States when immigration officers encountered him.[2] Because he was not seeking admission, I conclude that Corona Diaz is not subject to mandatory detention under § 1225(b)(2)(A) and is instead subject to the discretionary detention provisions

---

[2] The government does not argue that Corona Diaz's I-601A waiver application was an act to seek admission.

of § 1226(a). Corona Diaz's detention under § 1225(b)(2)(A) is contrary to that statute. Without a hearing authorized by § 1226(a), Corona Diaz is in custody in violation of the laws of the United States. I grant Corona Diaz's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[3]

## IV. Conclusion

Corona Diaz's petition for a writ of habeas corpus is granted. Kristi Noem is dismissed as a respondent. Samuel Olson is substituted for Russell Hott as a respondent. Brandon Cowley is added as a respondent to this petition. Respondents are ordered to provide Corona Diaz with a release hearing under 8 U.S.C. § 1226(a) (at which the standards for release under 8 C.F.R. § 236.1(c)(8) and (d) apply) within seven days of this order or otherwise release him. Because this order provides the full relief Corona Diaz is entitled to, the Clerk shall enter a final judgment order in favor of petitioner and terminate this civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: October 29, 2025

---

[3] Because I conclude that Corona Diaz is being held in violation of the Immigration and Nationality Act, I do not reach whether he has also been denied due process.